NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KHALIL WHEELERWEAVER, | : | |
| Plaintiff, | : | Civ. No. 23-22617 (GC) (JTQ) |
| v. | : | |
| C.O. TARGGART, et al., | : | **OPINION** |
| Defendants. | : | |

**CASTNER, District Judge**

This matter comes before the Court on Plaintiff Khalil Wheelweaver's submission of an amended civil rights complaint ("Amended Complaint") and the filing fee. At this time, the Court screens the Amended Complaint for dismissal under 28 U.S.C. § 1915A. For the reasons explained below, the Court dismisses the federal claims for failure to state a claim for relief pursuant to its screening authority under § 1915A, provides leave to submit a second amended complaint within 45 days, and declines supplemental jurisdiction over the state law claims at this time.

**I.        FACTUAL BACKGROUND**

In the caption of his Amended Complaint, Plaintiff lists as Defendants C.O. Targgart, C.O. Morton, Anissa Jett, Kathy Johnson, Kyle Yaindi, Tiffany Fairweather, Dr. Haggag, Nurse Sharon, Susan Springler, Amy Emrich, Garyn Nathan, Cyrus Manahan, Uchenna Nwodili, Ford Motor Vehicle Co., and New Jersey Department of Corrections. (*See* ECF No. 3, Amended Complaint at 1.)

On May 15, 2023, C.O. Targgart and C.O. Morton transported Plaintiff from Essex County Courthouse to New Jersey State Prison ("NJSP"). (Amended Complaint at 6.) When Plaintiff boarded the van, "neither officer took the time to secure [Plaintiff] with a seatbelt," and Plaintiff was unable to secure his own seatbelt because he was handcuffed to a waist chain and shackled at the ankles. (*Id.*)

As the van traveled on the New Jersey Turnpike, the officer driving the van allegedly drove aggressively in an unsafe manner. (*Id.*) The officer slammed on his brakes, which caused Plaintiff to fly out of his seat and slam headfirst into the van's metal partition. (*Id.*) Plaintiff hit his head, neck, and back and injured all three. (*Id.*) Because he was shackled, Plaintiff could not brace for the impact, and his right ankle shackle was blown off due to the impact. (*Id.*) Plaintiff alleges that C.O. Targgart and C.O. Morton were "negligent for recklessly operating the D.O.C. vehicle" and for failing to secure Plaintiff in the vehicle. (*Id.*)

Plaintiff also alleges that Ford Motor Vehicle Co. and the New Jersey Department of Corrections ("NJDOC") were "deliberately indifferent for constructing and outfitting the D.O.C. model vans in a manner that makes it unsafe for inmates to travel or be transported in." (*Id.* at 7.)

Plaintiff further alleges that "All medical personnel listed as defendants were more than negligent for failing to continue with medical follow ups after physical therapy to ensure that my injuries were properly treated; specifically an 'M.R.I.' as I requested." *Id.*

Plaintiff seeks compensatory and punitive damages, as well as injunctive relief to prevent him from traveling in Department of Corrections vehicles. *Id.*

Plaintiff has also provided five grievances that he submitted in connection with the incident and his medical care. Plaintiff's Exhibit One is a grievance dated May 16, 2023. (ECF No. 1-1 at 2.) In the grievance, Plaintiff states the following:

> I would like to make a complaint. I was transported back to [T]renton from Essex court and along the way the CTU officer slammed on the brakes causing me to fly and slam into the back wall extremely violently. I would like the video from the van as soon as possible please and thank you. In addition to this, [I] would like any report connected with this incident including the Rahway report from when the van made an "emergency" detour to [R]ahway's medical. [A]s well as any reports filed by the officers involved. [T]hank you.

Defendant Kyle Yaindi responded on May 18, 2023, as follows: "Grievance has been referred to Administration for review and appropriate action." *Id.* Plaintiff appealed that response, stating that he received conflicting information about whether the camera in the van was recording. *See id.* Plaintiff also complained that "the jail here is attempting to down play [sic] my injuries[,]" which included head, neck, and back pains, and throbbing headaches, and occasional numbness in his left arm and leg. (*See id.*) Defendant Tiffany Fairweather responded to Plaintiff that he would "receive a response directly from Administration regarding this matter." (*Id.*)

Exhibit Two is a grievance dated May 18, 2023. (ECF No. 1-1 at 3.) In that grievance, Plaintiff states that he was seen by Dr. Haggag and complained about "constant throbbing head aches, head pain, neck pain, back pain, and occasional numbness in his arm and leg." Dr. Haggag allegedly "did a VISUAL inspection and says it seems fine." (*Id.* (Emphasis in original).) Plaintiff allegedly told Dr. Haggag "multiple times that [he is] NOT fine" and needs to be taken to the hospital and for a CT and/or an MRI. (*Id.* (emphasis in original).) Plaintiff also states that he has serious neck pain and "went down on an emergency pass multiple time since the incident to report and be seen for neck, head, and back pain to no avail." (*Id.*) Defendant Susan Springler responded to the grievance with the following statement: "duplicate – referred to see provider for test results." (*Id.*)

Exhibit Three is a grievance dated May 19, 2023. (*Id.* at 3.) In that grievance, Plaintiff reiterates that he was injured during transport and states the following about his medical care:

3

> I went to Rahway prison and the medical staff said that CTU should have brought me to the hospital and not there.  When I came back I have consist[e]ntly told the medical staff including DR. HAGGAG about head pain, neck pain, back pain, dizziness, and seeing star[s].  I was told "you[']ll be okay in a week[.]"  [I] [sic] requested to go to the hospital due to me possibly having a subdural hematoma and it was not taken seriously.

(*Id.* (Emphasis in original).)  Defendant Kathy Johnson responded that Plaintiff should "review Jpay Ref# NJSP32021175 from Medical Department."[1]  *Id.*  Johnson also instructed Plaintiff to file an appeal or submit his concerns to the Medical Ombudsman if he disagreed with the response. (*See id.*)

Exhibit Four is a grievance dated May 20, 2023. (*Id.* at 4.)  In that grievance, Plaintiff reiterates that he has head, neck, and back pain, along with occasional numbness in his left arm and leg and dizziness, and sees stars when he lies down. (*Id.*)  Plaintiff also repeats his allegation that corrections officers took him to the Rahway prison medical department, and "the medical staff said that the officer should have brought us to the hospital." (*Id.*)  Plaintiff further complains that

> The medical staff here is NOT taking my injuries serious [I] have throbbing head pains, muscles spasms, and cramps.  I am in pain.  Can someone please assist me. I could have a subdural hematoma and it[']s not being treated because the medical staff here couldn[']t see it.

(*Id.* (Emphasis in original).)  Defendant Johnson closed this grievance as a duplicative request. (*See id.*)

Exhibit Five is a grievance dated June 6, 2023. (*Id.* at 5.)  Plaintiff writes the following:

> I am in constant pain.  I can barely sleep due to me being in pain.  All I am ASKING for is PROPER MEDICAL ATTENTION.  Same as anyone else.  I asked to speak with the Director of medical and also was denied.  I am running out of options.  What do you as ADMINISTRATION suggest I do?

---

[1] Plaintiff did not provide the Medical Department's response as an exhibit to his Complaint or Amended Complaint.

(*Id.* (Emphasis in original).) Defendant Garyn Nathan responded on June 15, 2023, and stated the following: "I sent your previous [J]pay to the dept. head of Medical[.]" Defendant Amy Emrich also viewed the grievance on June 9, 2023, and she changed the status to pending. (*See id.*)

Plaintiff filed his original complaint on November 22, 2023 (ECF No. 1), and did not submit the filing fee or an application to proceed without prepaying the filing fee. He filed an Amended Complaint and the filing fee on or about February 13, 2024. (ECF No. 3.)

## II. STANDARD OF REVIEW

Plaintiff paid the filing fee for this case; however, the Court has the authority to screen his Complaint pursuant to 28 U.S.C. § 1915A because he is a prisoner and has sued government agencies and officials. *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*). Section 1915A(a) requires the court to screen prisoner complaints seeking redress from governmental entities, officers, or employees and to dismiss those complaints falling under the categories listed in § 1915A (b)(1). "[T]he screening process of § 1915A targets claims that are 'frivolous, malicious, or fail[ ] to state a claim upon which relief may be granted; or . . . seek[ ] monetary relief from a defendant who is immune from such relief.'" *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109–10 (3d Cir. 2002) (quoting 28 U.S.C. § 1915A); *see also Durham v. Kelley*, 82 F.4th 217, 223 (3d Cir. 2023).

Whether a complaint fails to state a claim at screening is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, at the screening stage, "[t]he Court must accept all facts in the complaint as true, draw all reasonable inferences in the prisoner's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim."

*Durham*, 82 4th at 223; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Plaintiff is proceeding pro se, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). "This means [courts] remain flexible, especially 'when dealing with imprisoned pro se litigants[.]'" *Id.* (quoting *Mala*, 704 F. 3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F. 3d at 245).

### III. DISCUSSION

For the reasons explained below, the Court dismisses the federal claims pursuant to its screening authority under § 1915A, provides Plaintiff with leave to amend if he can cure the deficiencies in his federal claims, and declines supplemental jurisdiction at this time.

#### a. The Federal Claims Brought Pursuant to 42 U.S.C. § 1983

Plaintiff brings his civil rights claims pursuant to 42 U.S.C. § 1983. That statute provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...[.]

42 U.S.C. § 1983. To state a claim for relief under § 1983, a plaintiff must allege 1) a violation of a right secured by the Constitution or laws of the United States and 2) that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir. 1994). In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that "[n]either a state nor its officials acting in their official capacities are 'persons' under § 1983."

The Court dismisses the § 1983 claims against the New Jersey Department of Corrections because it is not a proper defendant under the statute.[2] *See Will*, 491 U.S. at 68–70 (holding that governmental entitles considered "arms of the State" for Eleventh Amendment purposes are not "persons" within the meaning of § 1983); *Crabow v. Southern State Correctional Facility*, 726 F. Supp. 537, 538–39 (D.N.J.1989) (stating that New Jersey Department of Corrections and state prison facilities not "persons" under § 1983).

"[A] state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985); *Ex parte Young*, 209 U.S. 123, 159–160 (1908). Here, however, the Court dismisses without prejudice Plaintiff's request not to ride in Department of Correction vehicles for lack of standing because he has not pleaded any facts suggesting that is likely to suffer a future injury of the same type. *See e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (explaining that "Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers").

The Court next addresses whether Plaintiff states a claim under § 1983 against C.O. Targgart and C.O. Morton for allegedly failing to secure him in the van, driving aggressively, and slamming on the brakes of the vehicle, causing Plaintiff to crash into the metal partition. Although

---

[2] The Court does not construe Plaintiff to bring § 1983 claims for damages against any of the individual Defendants in their official capacities. Nor does the Court construe Plaintiff to allege any § 1983 claims against Ford Motor Vehicle Co., which is a private entity. In certain circumstances, a private entity qualifies as a "state actor" for purposes of § 1983, *see Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009), but Plaintiff has not pleaded facts to suggest Ford Motor Company acted under color of state law in designing or manufacturing the vans used by the New Jersey Department of Corrections. The Court addresses the potential state law claims against Ford Motor Vehicle Co. below.

7

Plaintiff appears to frame this conduct as negligence, the Court liberally construes Plaintiff to allege that the officers also violated his rights under the Eighth Amendment. A convicted prisoner can assert an Eighth Amendment violation under § 1983 as a deliberate indifference or excessive force claim. *See Whitley v. Albers*, 475 U.S. 312, 319-20 (1986). Federal courts have recognized prisoner transportation claims under both standards. *See McKinney v. Lanigan*, No. 18-8618, 2022 WL 10075302, at *5 (D.N.J. Oct. 17, 2022); *Pagliaroli v. N.J. Dep't of Corr.*, No. 18-12412, 2023 WL 1419700, at *3, 6 (D.N.J. Jan. 31, 2023) (collecting cases applying either a deliberate indifference or excessive force standard to a "rough ride" Eighth Amendment claim).

The deliberate indifference standard is a two-pronged test: (1) the prisoner must be exposed to "a substantial risk of serious harm," and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 837–38 (1994). Deliberate indifference requires "more than mere negligence" but does not require acting "for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. The Supreme Court has stated that "acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. In excessive force cases, courts generally determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

The Third Circuit has not issued a precedential opinion involving prisoner transportation, but other circuit and district court decisions provide guidance in this area. In *Jabbar v. Fischer*, 683 F.3d 54, 58 (2d Cir. 2012), the Second Circuit held that the "absence of seatbelts on inmate bus transport," without more, does not constitute deliberate indifference in violation of the Eighth or Fourteenth Amendment. Courts in this circuit and elsewhere have held that liability in prisoner

8

transportation cases may arise "when a defendant refuses to stop driving recklessly, refuses to secure a prisoner, or refuses to intervene, despite a prisoner's complaints." *Williams v. Whitaker*, No. 16-6379, 2020 WL 1164788, at *4 (E.D. Pa. Mar. 10, 2020); *see also Brown v. Fortner*, 518 F.3d 552, 560 (8th Cir. 2008) (refusing to provide seatbelt to shackled prisoner, driving recklessly, and ignoring prisoner's warnings to slow down was evidence that Defendant knew of and disregarded a substantial risk of harm to the plaintiff); *Thompson v. Commonwealth*, 878 F.3d 89, 94-109 (4th Cir. 2017) (finding that the plaintiff provided sufficient evidence to defeat summary judgment on excessive force and deliberate indifference claims where the defendants refused to fasten shackled prisoner's seatbelt, drove at high speeds, laughed at the plaintiff's requests to be more careful, and taunted him about his filing of grievances).

      Here, Plaintiff alleges only that C.O. Targgart and C.O. Morton failed to "take the time" to secure his seatbelt, and one of the officers drove in an unsafe or aggressive manner and slammed on the brakes, which caused Plaintiff to hit the metal partition headfirst. Although these allegations could support a negligence claim, Plaintiff does not provide sufficient facts to suggest that either C.O. Targgart or C.O. Morton consciously disregarded a substantial risk of serious harm or acted maliciously or sadistically with the purpose of causing harm. Indeed, Plaintiff does not plead facts to suggest that C.O. Targgart or C.O. Morton intentionally or recklessly failed to secure Plaintiff's seatbelt, refused to secure his seatbelt upon Plaintiff's request, or even realized that they failed to secure Plaintiff's seatbelt. Although one of the officers allegedly drove the vehicle in an unsafe manner and slammed on the brakes, there is no indication that either officer realized that Plaintiff was unsecured and could be seriously injured. For these reasons, the Court dismisses the Eighth Amendment deliberate indifference and excessive force claims against C.O. Targgart and C.O.

Morton arising from this incident and provides Plaintiff with leave to amend if he can provide additional facts suggesting that these Defendants violated his constitutional rights.

Plaintiff also alleges that medical staff at NJSP provided him with inadequate medical care for his injuries.[3]  "The Eighth Amendment's prohibition on cruel and unusual punishment requires prison officials to provide basic medical treatment to inmates." *Perotti v. United States*, 664 F. App'x. 141, 144 (3d Cir. 2016) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)); *see also Duran v. Merline*, 923 F.Supp.2d 702, 719 (D.N.J. 2013) (explaining that the Constitution mandates that prison officials satisfy inmates' "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety") (citing *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).  To plead deliberate indifference to serious medical needs, a convicted prisoner must allege that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff."  *Durham*, 82 F.4th at 229 (citing *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003)).

The Court assumes for purposes of screening only that Plaintiff's injuries were a serious medical need.[4]  At issue is whether Plaintiff has sufficiently pleaded that any of the Defendants

---

[3] The Court does not construe Plaintiff to allege that C.O. Targgart and/or C.O. Morton acted with deliberate indifference to his serious medical needs by taking him to Rahway prison medical department rather than to the hospital, but Plaintiff is free to clarify his claims in a second amended complaint.

[4] At minimum, the "seriousness" prong requires a plaintiff to demonstrate that the need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987); *see also Pearson v. Prison Health Servs.*, 850 F.3d 526, 534 (3d Cir. 2017) (noting that a medical need is serious where it has been diagnosed by a physician as requiring treatment).  At the other end of the spectrum, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Lanzaro*, 834 F.2d at 347.

acted with deliberate indifference to his injuries. In cases where an inmate challenges the adequacy of his medical care, "mere disagreement as to the proper medical treatment does not support a claim of an Eighth Amendment violation." *Pearson*, 850 F. 3d at 535 (internal quotation and citation omitted). In such cases, courts presume that the medical care provided to the plaintiff was adequate, and the plaintiff must show that the medical provider did not exercise professional judgment. *See id.* at 536; *see also White v. Napoleon*, 897 F.2d 103, 108 (3d Cir. 1990) (mere medical malpractice or disagreement with the proper treatment of an illness cannot give rise to a violation of the Eighth Amendment). As long as a physician exercises professional judgment, his or her behavior does not violate a prisoner's constitutional rights. *See Moore v. Luffey*, 767 F. App'x. 335, 340 (3d Cir. 2019) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). A prison official also acts with deliberate indifference if he or she intentionally denies or delays access to medical care or interferes with the treatment once prescribed. *See id.* at 534 (*quoting Estelle*, 429 U.S. at 104-05); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (explaining that the court has "found deliberate indifference in situations where necessary medical treatment is delayed for non-medical reasons") (cleaned up).

In his Amended Complaint, Plaintiff contends very generally that "[a]ll medical personnel listed as defendants were more than negligent for failing to continue with medical follow ups after physical therapy to ensure that my injuries were properly treated; specifically an 'M.R.I.' as I requested." Notably, Plaintiff acknowledges that medical staff prescribed physical therapy for his injuries but alleges that he should have received an MRI in addition to physical therapy. Plaintiff also includes grievances he filed about the adequacy of his medical care covering a three-week period from May 16, 2023 through June 6, 2023. The Court credits Plaintiff's allegations in his grievances that he was in "constant pain" for three weeks after the incident and that he repeatedly

11

told medical staff, including Dr. Haggag, that he was experiencing pain, dizziness, numbness, and saw stars. Plaintiff also states in his grievances that he needed to go to the hospital and get an MRI to determine whether he had a "subdural hematoma," but he has not provided any facts in his Amended Complaint to support this potential diagnosis.

Moreover, it is unclear which of the Defendants listed in the caption were involved in his medical care. Based on the grievances, the only Defendant that appears to have treated Plaintiff is Dr. Haggag, who is mentioned in two grievances over a three-week period. Based on these grievances, Plaintiff alleges that Dr. Haggag provided inadequate medical care because he visually inspected Plaintiff's injuries, told Plaintiff he would be okay within a week, and did not order an MRI and/or a CT scan, as Plaintiff requested. Plaintiff fails to state a claim for deliberate indifference to his serious medical needs against Dr. Haggag because his sparse allegations do not suggest that Dr. Haggag failed to exercise professional judgment in treating him, but rather amount to a disagreement over the type of treatment provided. *See Innis v. Wilson*, 334 F. App'x. 454, 456-57 (3d Cir. 2009) (disagreement with treatment received does not state a viable claim for relief). Nor does Plaintiff provide any well-pleaded facts suggesting that Dr. Haggag or another medical provider delayed or denied Plaintiff an MRI for nonmedical reasons. *See Pearson*, 850 F.3d at 537. The Court dismisses the inadequate medical care claim as to Dr. Haggag and provides Plaintiff with leave to submit a second amended complaint as to this Defendant and the other medical providers involved in his care.

Plaintiff has also sued the prison officials who viewed and responded to his grievances; however, a non-physician defendant is not deliberately indifferent to a prisoner's serious medical needs in violation of the Eighth Amendment if she fails to respond to an inmate's administrative complaint regarding medical treatment while the inmate is already receiving treatment by the

12

prison doctor. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "Once a prison grievance examiner becomes aware of possible mistreatment, the Eighth Amendment does not require him or her to do more than 'review[ ] ... [the prisoner's] complaints and verif[y] with the medical officials that [the prisoner] was receiving treatment.'" *Glenn v. Barua*, 252 F. App'x. 493, 498 (3d Cir. 2007) (quoting *Greeno v. Daley*, 414 F.3d 645, 655–56 (7th Cir. 2005)). In addition, after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement.[5] *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1998) *see also Brooks v. Beard*, 167 F. App'x. 923, 925 (3d Cir. 2006). Here, Plaintiff fails to state a claim for inadequate medical treatment against Dr. Haggag or any of the medical providers. Moreover, the exhibits show that Kathy Johnson, Kyle Yaindi, Tiffany Fairweather, Susan Springler, Amy Emrich, and Garyn Nathan responded to Plaintiff's grievances and referred his complaints to prison administration and the medical director for review. The medical department also responded to Plaintiff's grievances, but Plaintiff has not provided that response as an exhibit. The Court dismisses without prejudice the deliberate indifference claims as to these Defendants for failure to state a claim for relief and permits Plaintiff to submit a second amended complaint if he can show that any of the Defendants acted with deliberate indifference to his serious medical needs.

The Court also dismisses without prejudice the § 1983 claims against the remaining individual Defendants for lack of personal involvement in the alleged wrongs. Liability in a 42

---

[5] In addition, prisoners do not have a constitutionally protected right to prison grievance procedures. *Speight v. Sims*, 283 F. App'x 880 (3d Cir. 2008) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Thus, a prison official's inadequate response to grievances (or failure to respond to grievances altogether) does not state a claim for relief. *Washington v. Crum*, No. 19-14602022 WL 798372, at *11 (W.D. Pa. Mar. 16, 2022) (explaining that a plaintiff "cannot recover from the named defendants [under § 1983] for failing to respond to his grievances").

U.S.C. § 1983 action is personal in nature and defendants are "liable only for their own unconstitutional conduct." *Barkes v. First Corr. Med, Inc.*, 166 F.3d 307, 316 (3d Cir. 2014), rev'd on other grounds sub nom. *Taylor v. Barkes*, 575 U.S. 822 (2015). Respondeat superior cannot form the basis of liability. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *see also Alexander v. Forr*, 297 F. App'x 102, 104-05 (3d Cir. 2008) (constitutional deprivation cannot be premised merely on the fact that defendant was a prison supervisor when incidents set forth in the complaint occurred). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The Court dismisses Plaintiff's claims against the remaining individual Defendants—Anissa Jett, Nurse Sharon, Cyrus Manahan, and Uchenna Nwodili—for failure to state a claim for relief. To the extent any of these Defendants were personally involved in the alleged denial of adequate medical care, Plaintiff may submit a second amended complaint.

    **b. The State Law Claims**

In addition to his federal claims, Plaintiff also alleges that C.O. Targgart and C.O. Morton were negligent for failing to secure his seatbelt and driving aggressively. Plaintiff may be attempting to assert a medical negligence claim against the Department of Corrections and a defective product claim against Ford Motor Vehicle Co. These claims arise under state law. Where a federal court has original jurisdiction over certain claims, it also has supplemental jurisdiction over all other related claims that form part of the "same case or controversy" under Article III of the United States Constitution. 28 U.S.C. § 1367(a); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (same). Section 1367 (c)(3) provides that district courts "may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all

14

claims over which it has original jurisdiction."  As relevant here, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court <u>must</u> decline to decide the pendent state law claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original).  "Additionally, the federal court should be guided by the goal of avoiding needless decisions of state law ... both as a matter of comity and to promote justice between the parties."  *Gibbs*, 383 U.S. at 726.  Here, the Court has dismissed the federal claims at an early stage and declines supplemental jurisdiction over any potential state law claims at this time.[6]

## IV.   CONCLUSION

For the reasons explained in this Opinion, the Court dismisses the federal claims pursuant to its screening authority under 28 U.S.C. § 1915A.  The § 1983 claims against the New Jersey Department of Corrections are dismissed with prejudice.  The remaining claims under § 1983 are dismissed without prejudice for the reasons stated in this Opinion.  The Court declines supplemental jurisdiction over any potential state law claims at this time.  Plaintiff may submit a second amended complaint within 45 days if he can cure the deficiencies in his federal claims and may also reassert his state law claims.  An appropriate Order follows.

DATED: July 11, 2024

*Georgette Castner*
_____
GEORGETTE CASTNER
United States District Judge

---

[6] If Plaintiff submits a second amended complaint, he is free to reassert his state law claims.  If Plaintiff states one or more federal claims, the Court will address the state law claims at that time.  Alternately, Plaintiff is free to file his claims in state court.